## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-cv-14003-BLOOM

BRIAN JEREMIAH SHEPARD,

     Petitioner,

v.

FLORIDA DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

### <u>ORDER</u>

**THIS CAUSE** is before the Court on Petitioner Jeremiah Shepard's ("Shepard" or "Petitioner") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, ECF No. [1] ("Petition"), filed on December 28, 2020.[1] Shepard challenges the constitutionality of his convictions and sentences in St. Lucie County Case No. 562012-CF-001942-A. *See generally id.*

Respondent Florida Department of Corrections ("Respondent") filed a Response to Order to Show Cause, ECF No. [11], and an Appendix to the Response, ECF No. [12], with attached exhibits, ECF Nos. [12-1], [12-2], [12-3]. Respondent also filed a Notice of Filing Transcripts, ECF No. [13], with attached transcripts, ECF Nos. [13-1], [13-2]. Shepard filed a Reply, ECF No. [16]. The Court has carefully considered the Petition, all supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Petition is denied.

---

[1] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009).

## I.  BACKGROUND

On November 1, 2012, an Information was filed in the Nineteenth Judicial Circuit for St. Lucie County, charging Shepard with committing burglary and related offenses. ECF No. [12-1] at 10.[2] He pleaded not guilty and went to trial on the charges of burglary of a dwelling, grand theft, resisting an officer without violence, and possession of burglary tools. ECF No. [13-1] at 41.

***Evidence Presented at Trial***. On the night of June 25, 2012, Deputy Glover was dispatched to assist in an investigation related to a suspicious vehicle parked outside of the Meadowood Community, a gated residential community with a golf course. *Id.* at 274-75, 312. Deputy Glover was patrolling on foot around 11:30 p.m. when he came across a man "dressed in all black." *Id.* at 283, 285. Deputy Glover yelled "Sheriff's Office, stop." *Id.* at 286. The individual took off running toward the golf course. *Id.* at 286-87. Deputy Glover called for backup, and a helicopter and K-9 unit were dispatched to find the unidentified individual. *Id.* at 290.

Meanwhile, near where he had first seen the man dressed in black, Deputy Glover noticed a purse on the driveway in front of a residence. *Id.* at 291. Deputy Glover opened the purse and found the driver's license of a woman, Mrs. Meyer, whose address matched the residence where the purse was found. *Id.* at 296.

At this point, the K-9 unit located the man dressed in black, hiding in the bushes. *Id.* at 373. On or near his person, officers recovered latex gloves, a surgical mask, a blue mesh beg, black socks, a silver folding knife, a flashlight, and money. *Id.* at 421-25, 436. Deputy Glover confirmed that it was the same individual who ran from him, and he identified him as Shepard. *Id.* at 297.

With purse in hand, Deputy Glover knocked on the door of the Meyers' residence. *Id.* The Meyers confirmed that the purse was theirs, and they granted permission for Deputy Glover to

---

[2]  The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

investigate the house for evidence of forced entry. *Id*. at 298. He discovered a window that was slightly ajar with a chair below it, "dirt on a very clean counter," and "things that had been knocked over." *Id*. at 299.

Mrs. Meyer testified that she closed and locked her doors and windows prior to going to bed. *Id*. at 343. She further testified that the chair under the window was out of place, along with other objects including a knife block and a sugar bowl. *Id.* at 345. She confirmed that the purse found in the driveway belonged to her and she testified that nothing was taken from it apart from cash in small denominations, which she estimated to be "in the seventies." *Id*. at 348, 349. She kept the purse in her bedroom closet at night. *Id*. at 344. When Mrs. Meyer was shown a photograph of the money recovered from Shepard, she testified that it was in the same amount and small denominations as the money missing from her purse. *Id.* at 356.

Shepard did not testify in his defense. He called two witnesses. A Meadowood golf course maintenance worker testified that he found a pair of sandals on the golf course on the morning of June 26. *Id.* at 490, 500. The CFO of Natalie's Orchid Island Juice Company testified that Shepard was an employee with that company and received a paycheck of $625.00 on June 15. *Id*. at 510-11. She further testified that employees at Natalie's Orchid Island Juice Company are issued gloves and masks similar to those found near Shepard. *Id*. at 513-14.

***Remaining Procedural History*.** At the end of the State's case, Shepard moved for a judgment of acquittal of all charges. *Id*. at 472, 477. The court granted Shepard's motion with respect to the charge of possession of burglary tools but found sufficient evidence for the remaining charges to go to the jury. *Id*. at 487.

The jury convicted Shepard of the three remaining charges — burglary of a dwelling, theft, and resisting an officer. ECF No. [12-1] at 13-14. The court determined that Shepard was a habitual

felony offender and a prison releasee reoffender and sentenced him to thirty years in prison. *Id.* at 17-22.

On appeal, the Fourth District Court of Appeal affirmed without a written opinion. *Shepard v. State*, 230 So.3d 464 (Fla. 4th DCA 2017).

On February 14, 2018, Shepard filed a Rule 3.850 motion for postconviction relief. ECF No. [12-1] at 117. The trial court held an evidentiary hearing before denying Shepard's motion. ECF No. [12-2] at 215. The Fourth District Court of Appeal again affirmed without a written opinion. *Shepard v. State*, 302 So.3d 887 (Fla. 4th DCA 2020).

On December 28, 2020, Shepard filed the instant Petition. ECF No. [1] at 36. He asserts ten claims of trial court error and eight claims of ineffective assistance of counsel. *Id.* at 5-25.

## II.  LEGAL STANDARD

### A.    *Deference Under § 2254*

A court's review of a state prisoner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Abdul–Kabir v. Quarterman*, 550 U.S. 233, 246 (2007). "The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016) (quotation marks omitted). This standard is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks omitted).

According to AEDPA, a federal court may not grant a habeas petitioner relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see*

4

*also Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1053 (11th Cir. 2017) (citing 28 U.S.C. § 2254(d)).

A state court decision is "contrary to" established Supreme Court precedent when it (1) applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) confronts a set of facts materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of clearly established federal law is different from an incorrect application of federal law. *Id.* at 410. Consequently, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted). If the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Even summary rejection of a claim, without explanation, qualifies as an adjudication on the merits, warranting deference. *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1351 (11th Cir. 2019). If the state court's merits determination is unaccompanied by an explanation, federal courts should "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. Furthermore, a decision is still an adjudication on the merits when it "addresses some but not all of a defendant's claims." *Johnson v. Williams*, 568 U.S. 289, 298 (2013).

Moreover, a federal district court is authorized to deny a claim for federal habeas corpus relief when the claim is subject to rejection under *de novo* review, regardless of whether AEDPA

deference applies. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (holding federal courts may deny petitions for writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, as a habeas petitioner will not be entitled to habeas relief if his claim is rejected following *de novo* review); *Connor v. GDCP Warden*, 784 F.3d 752, 767 (11th Cir. 2015).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings . . . , and demands that state-court decisions be given the benefit of the doubt[.]" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quotation marks and footnote omitted). Deferential review under § 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

### B.   *Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to assistance of counsel during criminal proceedings. *See Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."   *Id.* at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 20 (2013). "Where the highly deferential standards mandated by *Strickland* and AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both (1) that counsel's performance was deficient, and (2) a reasonable probability that the

deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687-88; *see also Harrington*, 562 U.S. at 104.

To establish deficient performance, the petitioner must show that, considering all circumstances, "counsel's conduct fell 'outside the wide range of professionally competent assistance.'" *Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *See Strickland*, 466 U.S. at 690-91. The court's review of counsel's performance should focus on "not what is possible or 'what is prudent or appropriate, but only [on] what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (footnote omitted; quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). Counsel is not ineffective for failing to raise non-meritorious issues, *see Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); nor is counsel required to present every non-frivolous argument, *see Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

Regarding the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *See id.* at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013).

## III. DISCUSSION

### A. Timeliness, Exhaustion, and Procedural Default

The parties agree that the Petition is timely filed. ECF Nos. [1] at 35, [11] at 6. The parties dispute whether Claims One through Nine are unexhausted. *See* ECF No. [11] at 8-27.

***Procedural Default of Grounds One through Seven***. In Grounds One through Seven, Shepard argues that the trial court erred in partially denying his motion for judgment of acquittal as to the charges of burglary and theft.[3] ECF No. [1] at 5-12. Each of these seven grounds allege insufficiency of the evidence: Ground One alleges that the evidence "was wholly circumstantial," *id.* at 5; Ground Two asserts that the evidence "lacked the weight necessary to prove entry, or that a crime was committed inside the dwelling," *id.* at 6; Ground Three claims that the evidence did not eliminate "the possibility" that another individual committed the burglary, *id.* at 7; Ground Four alleges insufficient "evidence of forced entry," *id.* at 9; Ground Five asserts a failure to prove all elements of burglary and theft, *id.* at 10; Ground Six claims the State failed to prove that an "unidentified individual" was not the perpetrator of the crimes charged, *id.* at 11; and Ground Seven asserts failure to prove "that the defendant possessed stolen property," *id*. at 12.

Respondent contends these claims are unexhausted because, even though Shepard raised them on direct appeal, he based his arguments "only on state evidentiary cases and rules" and did not clearly set forth a federal claim. ECF No. [11] at 8. The Court agrees.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies . . . , thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation marks omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quotation marks omitted). "Thus, to exhaust state remedies fully the petitioner must make the state court

---

[3] As noted above, the trial court granted Shepard's motion for judgment of acquittal as to the charge of possession of burglary tools. ECF No. [13-1] at 487.

aware that the claims asserted present federal constitutional issues." *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir.2007) (quotation marks omitted).

Shepard brought a single sufficiency-of-the-evidence claim on direct appeal. ECF No. [12-1] at 55. He did not specify whether the claim was brought under federal or state law. *Id*. However, he exclusively cited to state law cases in support of his argument, which relied upon "[a] special standard of review of the sufficiency of the evidence" that "applies where a conviction is wholly based on circumstantial evidence." *Id*. at 62. That "special standard" exists under Florida law, but it was "*rejected* as a matter of federal law." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 460 (11th Cir. 2015) (emphasis in the original). Although Shepard invoked the U.S. Constitution in a separate argument within his brief on direct appeal, the section of his brief arguing sufficiency of the evidence contains no citations to federal law. *Id*. at 15-18, 19. The Fourth District's one-word affirmance does not reveal whether it considered a claim arising under federal law. ECF No. [12-1] at 89 ("*Affirmed*.").

The Eleventh Circuit addressed nearly an identical situation in *Preston v. Secretary, Florida Department of Corrections.* The petitioner in *Preston* litigated a sufficiency of the evidence claim before the Florida courts, but he "did not even hint to the [state courts] that he intended to raise a federal claim." 785 F.3d at 458. "He did not cite a single federal case," and he "invoked and relied upon Florida's unique rule for convictions based on circumstantial evidence in challenging his conviction." *Id*. at 458, 461. Therefore, "[a]ny federal claim that [the petitioner] could have brought would have been judged by a different standard than the state claim he actually did bring." *Id*. at 461. Thus, Shepard's litigation of his state-based claim did not exhaust the federal sufficiency-of-the-evidence claim he attempted to raise in his § 2254 petition, so that claim was procedurally defaulted. *Id*. at 462.

*Preston* is squarely on point and renders Grounds One through Seven of the Petition unexhausted. Like the petitioner in *Preston*, Shepard in state court "relied on a unique rule of state law, cited exclusively to state cases, and all of his substantive arguments addressed Florida law." *Id*. at 462 (quotation marks omitted). Nothing in Shepard's brief "would have alerted the state court to the presence of a federal claim[.]" *Id*. (quotation marks omitted). Thus, Grounds One through Seven are unexhausted. *See id*.

"[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile." *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999). "[A]bsent a showing of cause for and actual prejudice from the default[,]" a petitioner procedurally barred from bringing a claim in state court is said to have procedurally defaulted the claim. *Id.* at 1302. In Florida, claims which could have been raised on direct appeal, but were not, are considered abandoned and procedurally barred from collateral review. *See Sullivan v. Wainwright*, 695 F.2d 1306, 1310, nn.4, 6 (11th Cir. 1983).

Because the bases for Shepard's federal insufficiency-of-the-evidence claims were clearly available to Shepard on direct appeal, and he cannot return to the state court to exhaust them, those claims are procedurally defaulted. *See Ivy v. Fla. Dep't of Corr.*, 543 F. App'x 923, 927-28 (11th Cir. 2013) ("[The petitioner's] failure to exhaust his claim resulted in a procedural default because 'it is apparent that the Florida courts would now refuse to hear this claim[.]'" (quoting *Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1342 (11th Cir. 2009)).

Federal habeas review of a procedurally defaulted claim is barred unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A petitioner can show cause to excuse

the procedural default by alleging that some objective factor, external to the defense, impeded his effort to raise the claim properly in the state court. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). No such showing has been made here. As such, Grounds One through Seven are procedurally defaulted.

**Procedural Default of Grounds Eight and Nine.** Ground Eight alleges that the trial court erred in admitting photographs of Shepard shortly after he was arrested. ECF No. [1] at 13. Ground Nine alleges that the trial court erred in failing to *sua sponte* prohibit the State in closing argument from referring to items in Shepard's possession as "burglary tools." *Id.* at 14. Respondent argues that both claims are unexhausted because Shepard failed to raise them on direct appeal or in his post-conviction motion. ECF No. [11] at 26-27. Shepard does not contend otherwise, *see generally* ECF No. 16, and a review of the state court record reveals that Respondent is correct. ECF No. [12-1] at 42-67 (Initial Brief of Appellant on direct appeal); *id.* at 117-138 (Motion for Postconviction Relief). Those two claims were never raised in state court.

For the same reasons noted above in the Court's analysis of Grounds One through Seven, Shepard's failure to exhaust Grounds Eight and Nine in state court renders them procedurally defaulted. *See Ivy*, F. App'x at 927. Shepard has not shown cause for his procedural default of these claims, so the Court is procedurally barred from considering them. *See Coleman*, 501 U.S. at 750.

**B.   The Merits of Ground Ten**

In Ground Ten, Shepard argues that the prosecutor made impermissible comments in her closing argument that "confuse[d] and misled" the jury into thinking that he had the burden of proving his innocence. ECF No. [1] at 15. Shepard raised this argument on direct appeal, so it was exhausted in state court. ECF No. [12-1] at 64.

11

The allegedly improper statements occurred during the State's final summation, after the Defense's closing argument. The prosecutor stated:

> How did we first find this Defendant? He's standing in a housing complex — residential complex that he doesn't live in, he doesn't work there, doesn't even work close to there, in the middle of the night, where he's driven and parked his car not by the front gate, on the side of the road, wearing all black, long — two shirts, long-sleeved black shirt, standing out in front of a home that had just been burglarized.

ECF No. [13-1] at 571. The prosecutor then asked: "What is he doing there? . . . What reasonable explanation does he have for being there in the middle of the night on a Monday night?" *Id.*

At this point the Defense objected, arguing that the prosecutor's comments infringed upon Shepard's Fifth Amendment right not to testify. *Id.* at 572. The court overruled the objection, finding that the prosecutor's statement was "fair comment based on [Defense's] closing arguments." *Id.*

The prosecutor then continued:

> Why is he there? Can you think of a reasonable explanation based on all the facts of why he's there in the middle night in front of a home that's just been broken into, dressed like a burglar, all that stuff he has on him? He doesn't have any reason to be there.

*Id.* Defense objected again, but the court overruled the objection, finding the comments "appropriate for closing argument." *Id.*

"[P]rosecutors must refrain from making burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence to prove innocence." *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992). In analyzing whether prosecutorial comments in closing constitute burden shifting, the Court must examine the whole context, including the Defense's closing. *Brooks v. Kemp*, 762 F.2d 1383 (11 Cir. 1985). "[A] prosecutor's comments are not improper where they fall into the category of an invited response by the preceding argument of

defense counsel concerning the same subject." *United States v. Suggs*, 755 F.2d 1538, 1540 (11 Cir. 1985).

The essence of the Defense's closing was that Shepard was merely "in the wrong place at the wrong time." ECF No. [13-1] at 565. "Commonsense tells you people go in areas they may not belong all the time, but it doesn't mean they're committing burglaries." *Id*. "Brian Shepard may have been in the wrong place at the wrong time, but the evidence does not point that this man committed any crime in this home other than potentially running from a law enforcement officer because he was called out in a neighborhood he didn't belong." *Id*. at 569.

The Court agrees with the trial court that the prosecutor's statements were a fair response to the Defense's closing. In arguing that Shepard was simply "at the wrong place at the wrong time," *id.* at 569, Defense invited the State to question the reasonableness of that argument. The prosecutor did not comment on Shepard's decision not to testify. She simply asked the jury to question the likelihood that Shepard was simply at the wrong place at the wrong time.

Moreover, even if the prosecutor's comments were improper, that impropriety was cured by the court's instructions that accurately explained to the jury the State's burden of proof. ECF No. [13-1] at 588 ("To overcome the Defendant's presumption of innocence, the State has the burden of proving the crime with which the Defendant is charged was committed and that the Defendant is the person who committed the crime. The Defendant is not required to present evidence or prove anything."). The Eleventh Circuit has consistently held that burden-shifting comments by the prosecutor are "rendered harmless" by proper jury instructions regarding the Government's burden of proof. *United States v. Gabriel-Martinez*, 321 F. App'x 798, 803 (11th Cir. 2008); *see also Simon*, 964 F.2d at 1087.

Ground Ten is denied on the merits.

## C. Ineffective Assistance of Counsel Claims

Shepard asserts eight ineffective assistance of counsel (IAC) claims. ECF No. [1] at 18-25. In numbering these IAC claims, he restarts at "Ground One." *Id*. The Court will follow Shepard's numbering, but it will add "IAC" before each ground to avoid confusion with the claims already addressed above.

**IAC Ground One** asserts ineffective assistance due to trial counsel's failure to file a pre-trial motion to dismiss the charge of possession of burglary tools. ECF No. [1] at 18. As noted above, the trial court granted a judgement of acquittal on the charge of possession of burglary tools after the State concluded its case in chief. ECF. No. [13-1] at 487. Shepard asserts that he was prejudiced by the prosecutor's comments in opening argument that he used a pocket-knife to open a locked window in the burglarized house and he used gloves to avoid leaving fingerprints. ECF No. [1] at 18. According to Shepard, that prejudice would have been avoided had his attorney successfully moved to dismiss the "possession of burglary tools" charge prior to trial. *Id*.

Shepard raised this claim in his Rule 3.850 motion for postconviction relief. ECF No. [12-2] at 216. The postconviction court denied this claim after holding an evidentiary hearing. *Id*. The postconviction court found that Shepard's possession of the objects, "when viewed in totality with the other evidence in the case, were fairly commented on by the State during the trial[.]" *Id*. Even if Shepard's counsel had successfully dismissed the "possession of burglary tools" charge prior to trial, the State would not have been precluded from arguing that Shepard's possession of those objects was evidence of Shepard's guilt on the burglary charge. *Id*.

Having reviewed the record in full, the Court finds nothing unreasonable with the trial court's rejection of IAC Ground One. *Wilson*, 138 S. Ct. at 1192 (requiring a federal court sitting in habeas to defer to "reasonable" reasons given by the state court in rejecting a claim for relief). Pretrial dismissal of the possession charge would not have precluded the State from arguing that

14

Shepard's possession of a mask, gloves, flashlight, and pocketknife implicated him in the burglary. Accordingly, Shepard cannot show that "the result of the proceedings would have been different" had trial counsel made the pretrial motion, so this claim falls under the "prejudice" prong of *Strickland*. 466 U.S. at 694.

**IAC Ground Two** asserts ineffective assistance due to trial counsel's failure to object or move for mistrial based on the prosecutor's "continued references of burglary tools" during the States' closing argument. ECF No. [1] at 19. Shepard reasons that, at this point in the trial, the court had dismissed the charge of "possession of burglary tools," so any reference to burglary tools—implicit or explicit—was improper. *Id*.

The state postconviction court rejected this claim after holding an evidentiary hearing. ECF No. [12-2] at 217. The postconviction court found the claim to be "misguided in that the State was still permitted to argue" that "the possession of such items on the defendant at the time of his arrest" was a factor that implicated him in the burglary. *Id*.

Again, the Court finds the state court provided "reasonable" reasons to reject Ground Two. *Wilson*, 138 S. Ct. at 1192. The trial court's judgment of acquittal as to the charge of possession of burglary tools did not preclude the State from mentioning the objects altogether. This claim is rejected under the "prejudice" prong of *Strickland*. 466 U.S. at 694.

**IAC Ground Three** faults trial counsel for not requesting a "proper special instruction to the jury on possession of burglary tools count." ECF No. [1] at 20. Shepard asserts that his counsel should have requested an instruction to the jury that the items in Shepard's possession at the time of his arrest "were not burglary tools as a matter of law." *Id.*

The record reflects that, at the end of the trial, the trial court discussed with the parties how to instruct the jury regarding the dismissed charge of possession of burglary tools. *See* ECF No. [13-1] at 580-81. Shepard's counsel expressed a concern that the jury might "question as to what

happened to that particular count," so she requested an instruction. *Id*. at 581. The trial court proposed instructing the jury that "the charge of possession of burglary tools will no longer be a consideration." *Id.* Both parties agreed. *Id.*

The postconviction court rejected this claim because it found that Shepard's counsel made a valid "tactical" decision in not asking for a more specific instruction regarding the burglary charge, since such instruction would "simply highlight the issue." ECF No. [12-2] at 218. The Court agrees with the postconviction court that Shepard's counsel made a reasonable strategic choice based on an informed understanding of the law and facts of the case. *See Strickland*, 466 U.S. at 690-91. Moreover, it is highly unlikely that the court would have granted the special instruction he believes should have been given. The fact that the State presented insufficient evidence to support the charge of "possession of burglary tools" does not mean that the objects in Shepard's possession "were not burglary tools as a matter of law." ECF No. [1] at 20. This claim is denied because counsel's performance was not deficient and prejudice cannot be shown.

**IAC Ground Four** alleges ineffective assistance of counsel regarding the cross-examination of the victim, Mrs. Meyer. ECF No. [1] at 21. Shepard argues that his defense counsel failed to adequately question Mrs. Meyer on inconsistent statements she made during and before trial. *Id*. During trial, she testified that approximately seventy dollars were missing from her purse, an amount consistent with the amount found on Shepard. *Id.* Prior to trial, however, she said in a sworn statement that "approximately one hundred dollars" was taken from her purse, and additional money was taken from her husband's pants pockets. *Id.* Shepard argues that his counsel should have questioned her in cross-examination regarding the money she had claimed was missing from her husband's pants. *Id*.

In the evidentiary hearing, Shepard's trial counsel explained that she had "concerns about cross-examining Ms. Meyer." ECF No. [13-2] at 49. Because Mrs. Meyers was over eighty years

16

old, trial counsel "did not want to badger her," because that "would go over very poorly with the jury if we were beating up on an elderly person." *Id.*

The postconviction court found that trial counsel's "cross-examination strategy, for lack of better terminology, was to approach the witness with kid gloves. She did not want to appear to be bullying the witness." ECF No. [12-2] at 218. The court concluded that trial counsel's strategy was reasonable and a more confrontational style of cross-examination would not likely have "culminated in a different result at trial." *Id.* at 218-19.

Again, the Court finds the postconviction court's rejection of this claim well-reasoned and supported by the record. *Wilson*, 138 S. Ct. at 1192. In cross-examination, Shepard's trial counsel pointed out the discrepancy between Mrs. Meyer's testimony at trial (wherein she testified to an amount of money in "in the seventies") and her prior statement (wherein she approximated the amount to be "around $100"). ECF No. [13-1] at 354. Trial counsel made a valid strategic choice in not further attacking the octogenarian victim's allegedly inconsistent statements regarding money missing from her husband's pocket. *See Strickland*, 466 U.S. at 690-91. Trial counsel was not deficient, so the claim is denied.

**IAC Ground Five** alleges ineffective assistance of trial counsel for not requesting a mistrial when the prosecutor remarked that "black is the color of a burglar's wardrobe." ECF No. [1] at 22. Shepard asserts that effective trial counsel would have moved for a motion *in limine* to preclude such statements, objected to the statements when they arose, and moved for mistrial. *Id.*

The postconviction court rejected this claim prior to holding the evidentiary hearing. ECF No. [12-2] at 212. It adopted the reasoning provided by the state in its response to Shepard's Rule 3.850 motion, finding "insufficient prejudice to undermine the outcome of the trial." *Id.*

The record reflects that Shepard's counsel objected to the state's attempt to introduce photographs of Shepard at the time of his arrest. ECF No. [13-1] at 256. The State was candid in

its objective in introducing those photographs: "Your Honor, it is very relevant to my case that he was wearing all black that evening and the way he looked when he was arrested, he looks like a burglar, that's what I plan on arguing to the jury." *Id*. at 256-57. The trial court permitted the photographs to be admitted, finding that Shepard's all-black clothing was "relevant in this particular case[.]" ECF No. [13-1] at 263.

Upon review of the record, the Court does not find the exact language that Shepard is referring to; the Court does not see where the prosecutor stated "black is the color of a burglar's wardrobe." ECF No. [1] at 22. The closest statement the Court has identified occurred during closing argument, when the prosecutor claimed Shepard was "dressed like a burglar." ECF No. [13-1] at 572. Shepard's counsel objected "to the characterization," but the trial court overruled, finding the prosecutor's comments "appropriate for closing argument." *Id.*

The record refutes Shepard's claim because Shepard's trial counsel *did* object to the State's comment regarding Shepard's clothing, and his trial counsel *tried* to exclude photographs showing Shepard's all-black clothing. The trial court nonetheless admitted the photographs and allowed the "dressed like a burglar" characterization in the State's closing. ECF No. [13-1] at 263, 572. Given the trial court's rulings, there is no reasonable probability that the trial court would have granted a motion *in limine* or a motion for mistrial on this issue. Thus, the postconviction court reasonably rejected this claim due to Shepard's failure to establish prejudice from the allegedly deficient performance. ECF No. [12-2] at 212; *see Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). This claim is denied.

In **IAC Ground Seven**,[4] Shepard argues that trial counsel was deficient in failing to call Shepard's mother as a witness in his defense. ECF No. [1] at 23. According to Shepard, his mother would have testified that "Shepard paid his daughter's school tuition fee the previous day, and had cash left over." *Id*.

The postconviction court rejected this claim after the evidentiary hearing. ECF No. [12-2] at 219. According to trial counsel's testimony at the evidentiary hearing, the relevance of Shepard's mother's testimony was to establish that he possessed over $70 at the time of the offense. *Id*. Shepard's trial counsel felt that defense could sufficiently establish the fact that Shepard had money through the testimony of the CFO of Natalie's Orchid Island Juice Company. *Id*. The court found: "It was her preference not to call a family member if she could get the information from someone else, someone who would not automatically be inferred to be biased, but rather independent." *Id*. The postconviction court concluded that Shepard's counsel "did investigate what the defendants' [sic] mother would know and tactically chose not to use her as witness." ECF No. [12-2] at 219-20. The court found that tactical decision to be reasonable, so trial counsel's performance was not deficient under *Strickland*. *Id*.

Again, the Court finds that the postconviction court provided valid reasons in rejecting this claim. Shepard's mother's testimony would merely have corroborated testimony that Shepard had money; her testimony would have added little because she was not "able to identify the exact dollar amount or denominations of bills." ECF No. [12-2] at 219. Trial counsel reasonably concluded that the value of her testimony was outweighed by the State's likely attack on it as biased. In short, the Court agrees that "[c]ounsel's strategy choice was well within the range of professionally reasonable judgments[.]" *Strickland*, 466 U.S. at 700. IAC Ground Seven is denied.

---

[4] The Petition skips from Ground Five to Ground Seven.

19

In **IAC Ground Eight**, Shepard assets that his trial counsel was ineffective for not moving to "suppress photographic evidence." ECF No. [1] at 24. From the Petition, it is not entirely clear what "photographic evidence" Shepard is referring to, but the Court infers he is referring to photographs taken in or around the victim's house. *Id*. The postconviction court rejected a similar claim prior to the evidentiary hearing. ECF No. [12-2] at 212. It "adopt[ed] the State's reasoning in finding insufficient prejudice to undermine the outcome of the trial." *Id*.

Having reviewed the record, the Court agrees that Shepard cannot show prejudice resulting from trial counsel's alleged failure not to move to suppress photographic evidence of the house that was allegedly burglarized. Such evidence is directly relevant to the crime of burglary, and Shepard has failed to show any reason that the trial court would have suppressed it. Absent prejudice shown, the claim must be denied. *See Strickland*, 466 U.S. at 694

In **IAC Ground Nine**, Shepard argues that his trial counsel failed to adequately impeach the State's prime witness, Deputy Glover. ECF No. [1] at 25. Shepard asserts that photographs refute Deputy Glover's testimony regarding the location of the purse and the condition of the Meyers' house. *Id*. Shepard believes the outcome of the trial would have differed had his counsel questioned Deputy Glover further on these issues. *Id*.

The postconviction court summarily rejected this claim prior to the evidentiary hearing. ECF No. [12-2] at 212. It "adopt[ed] the State's reasoning in finding insufficient prejudice to undermine the outcome of the trial." *Id*.

The record reflects that Shepard's counsel questioned Deputy Glover about the location of the purse and whether he moved it. ECF No. [13-1] at 322-23. Shepard's counsel further established on cross- examination that Deputy Glover did not take any of the pictures taken during the night of the burglary. *Id*. at 326. Finally, during closing, Shepard's counsel pointed to the

discrepancy between Deputy Glover's testimony "that there's mud all over the place" in the house, and the photographs that do not reveal dirt or mud in the house. *Id*. at 562.

Having reviewed in full the cross-examination of Deputy Glover, the Court concludes that Shepard's counsel did not perform deficiently. It was a valid strategic decision to note the inconsistencies between the photos and Deputy Glover's testimony during the State's closing argument rather than during cross-examination, when Deputy Glover might have been able to explain them. Moreover, as the postconviction court found, Shepard cannot show that the outcome of the trial would have differed had his counsel cross-examined Deputy Glover differently. *See* ECF No. [12-2] at 212. Whatever inconsistencies his counsel might have uncovered during cross-examination of Deputy Glover, they would likely have been outweighed by the testimony of Mrs. Meyer, which largely corroborated Deputy Glover's testimony. The Court denies IAC Ground Nine under both prongs of *Strickland*. 466 U.S. at 687-88.

## IV. EVIDENTIARY HEARING

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016). Here, the issues presented can be resolved based on the record before the Court. Because the Court can "adequately assess [Shepard's] claim[s] without further factual development[,]" Shepard is not entitled to an evidentiary hearing. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).

## V.  CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his or her petition for writ of habeas corpus has no absolute entitlement to appeal; rather, in order to do so, he must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if Shepard makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where the district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists "would find the district court's assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court rejects a petitioner's claims on procedural grounds, the petitioner must additionally show that "jurists of reason" would find the district court's procedural ruling "debatable." *Id.*

Upon consideration of the record, the Court grants a certificate of appealability on Ground Ten only, wherein Shepard argues that he was prejudiced by the prosecutor's impermissible burden-shifting statements during closing. *See* ECF No. [1] at 15. The undersigned concluded that the prosecutor's statements were responsive to the Defense's closing, and, even if they were improper, any harm was negated by the trial court's proper jury instructions. However, reasonable jurists could disagree with those determinations. Accordingly, a certificate of appealability will issue as to Ground Ten. It is denied as to all other grounds.

## VI. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Petitioner Jeremiah Shepard's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, **ECF No. [1]**, is **DENIED**.

2.  A certificate of appealability shall issue as to Ground Ten only.

Case No. 21-cv-14003-BLOOM

3.  To the extent not otherwise disposed of, any pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.

4.  The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 18, 2022.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Brian Jeremiah Shepard, *pro se*
K61432
Everglades Correctional Institution
Inmate Mail/Parcels
1599 SW 187th Avenue
Miami, FL 33194